```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JOSE L. TAVAREZ,                     :
                                     :
               Plaintiff,            :   04 Civ. 9541 (LAP)
                                     :
        -against-                    :   MEMORANDUM AND ORDER
                                     :
STATE OF NEW YORK OFFICE OF PARKS,   :
RECREATION and HISTORIC              :
PRESERVATION, BERNADETTE CASTRO in   :
her official and individual          :
capacity, LATEEF MUMIN in his        :
official and individual capacity,    :
DARREN GREEN in his official and     :
individual capacity,                 :
                                     :
               Defendants.           :
------------------------------------x
```

LORETTA A. PRESKA, U.S.D.J.

Plaintiff Jose L. Tavarez brings this action against Defendants Darren Green and Lateef Mu'Min under 28 U.S.C. § 1983.[1] Plaintiff claims that Defendants terminated his employment in retaliation for his speaking out on a matter of public concern in violation of the First Amendment and that he was denied due process when he was terminated in violation of the Fourteenth Amendment. Defendants now move for summary judgment under Rule 56 of the Federal Rules of

---

[1] On April 13, 2005, the Court granted the State of New York Office of Parks, Recreation and Historic Preservation's and Commissioner Bernadette Castro's joint motion to dismiss. (Dkt. No. 16).

1

Civil Procedure.  For the reasons set forth below, the motion is granted.

BACKGROUND

On June 14, 1999, Plaintiff was hired as a seasonal lifeguard at Riverbank State Park ("Riverbank") by the State of New York Office of Parks, Recreation and Historic Preservation.  (Defs. 56.1 Stmt. ¶ 1).[2]  When he was hired, Plaintiff was provided with a Seasonal Employee Handbook and a Seasonal Appointment Letter.  (Id. ¶¶ 1-2).  These documents informed Plaintiff that, inter alia, his employment was "temporary" and that it "may be terminated at any time." (Speres Aff., Ex. A at DEF 430 (Seasonal Employee Handbook); Speres Aff., Ex. C at DEF 120 (Seasonal Appointment Letter)).[3]

Seasonal lifeguards, including Plaintiff, are entitled to representation by the New York State Correctional Officers and Police Benevolent Association ("NYSCOPBA").

---

[2] "Defs. 56.1 Stmt." refers to those material facts set forth in "Defendants' Statement Pursuant to Rule 56.1," filed on May 1, 2006, and which were admitted in "Plaintiff's Counter-Statement Pursuant to Local Civil Rule 56.1," filed on June 1, 2006, or were otherwise undisputed.

[3] "Speres Aff." refers to the "Affirmation of Constantine A. Speres," including the exhibits appended thereto, filed on May 1, 2006.

2

(Defs. 56.1 Stmt. ¶ 18).  During the period in question, a collective bargaining agreement (the "CBA") governed the relationship between the State of New York and the NYSCOPBA.  (Carabba Aff., Ex. L (CBA)).[4]  Article 8 of the CBA provided that, <u>inter</u> <u>alia</u>, "employees otherwise subject to the provisions of Sections 75 and 76 of the [New York] Civil Service Law" shall be terminated only for just cause and after proper notice is provided.  (<u>Id.</u> at 25-26).  Appendix D to the CBA is entitled "Seasonal/Temporary Part-Time Employees Agreement."  (<u>Id.</u> at 122).  It provided that, <u>inter</u> <u>alia</u>, "[e]mployees who have completed at least six years of continuous service of six pay periods on a scheduled half time or greater basis in each of those six years, shall be entitled to an exit interview . . . following notice of involuntary separation" and that a "local union representative may accompany the employee in the exit interview session." (<u>Id.</u> at 123).

In 2001, Plaintiff had a meeting with Tracey Townes, a Riverbank employee, about his less than satisfactory performance.  (Speres Aff., Ex. J at 34/15-22 (Transcript of Plaintiff's January 24, 2006 Deposition)). Specifically, the meeting focused on Plaintiff's improper practice of

---

[4] "Carabba Aff." refers to the "Affirmation of Anthony Carabba, Jr.," including the exhibits appended thereto, filed on June 1, 2006.

calling in sick the day before or after his day off. (Id. at 34/23-35/2, 38/20-22. In 2002, Plaintiff had a meeting with, among other persons, Gilroy Enriquez, a supervisor at Riverbank, where Plaintiff was informed that his performance was less than satisfactory. (Id. at 33/2-34/4). Plaintiff also received verbal warnings about his poor time and attendance in the Summers of 2002, 2003, and 2004. (Id. at 39/20-40/19). In addition, Plaintiff received performance evaluations in the Summers of 2002 and 2003 which stated, inter alia, that he needed to take more initiative and that his productivity had not improved despite being at Riverbank for several years. (Id. at 36/3-38/9; see also Speres Aff., Ex. I at DEF 22-23 (Plaintiff's Summer 2003 Evaluation) & DEF 24-25 (Plaintiff's Summer 2002 Evaluation)).[5]

From January 30, 2004 to August 5, 2004, Plaintiff was on approved Worker's Compensation leave. (Opening Mem. at 7; Opp'n Mem. at 15; see also Speres Aff., Ex. H (Defendant

---

[5] At oral argument, counsel for Plaintiff pointed out that Plaintiff received a "Satisfactory" and "Satisfactory Minus" rating for the category of "[p]romptly report[ing] for duty (on time)" in his Summer 2002 and Summer 2003 evaluations, respectively. (Speres Aff., Ex. I at DEF 22, DEF 24). As discussed below (see infra at 12-13), Plaintiff's acknowledgement of his poor time and attendance undermines any attempt by Plaintiff to rely on these two ratings to show that there is a genuine issue of material fact as to when and for what reason Defendants decided to terminate him.

4

Darren Green's 2004 Log of Plaintiff's Time and Attendance)).[6] In late July 2004 or early August 2004, Mr. Enriquez, Arturo Alicea, David Gonzalez, and Luis Trinidad, all supervisors at Riverbank, met to review the performance of Riverbank's seasonal lifeguards. (Defs. 56.1 Stmt. ¶ 46). They recommended to Defendant Darren Green that three seasonal employees, including Plaintiff, be terminated at the end of the Summer of 2004. (Id. ¶ 47). Defendant Green agreed with the recommendation and conveyed it to Shelley Weinreb, the Director of Administration and Operations for the State of New York Office of Parks, Recreation and Historic Preservation's New York City Region, and Defendant Lateef Mu'Min, then a pool supervisor at Riverbank. (Id. ¶¶ 8, 48). Ms. Weinreb and Defendant Mu'Min agreed with the recommendation. (Id. ¶ 49).

On August 19, 2004, Defendant Green sent Ms. Weinreb an e-mail (the "August 19, 2004 E-Mail") asking her to check on the health insurance, retirement, and RS 5014 form information for the three lifeguards identified by Mr. Alicea, Mr. Gonzalez, Mr. Trinidad, and Mr. Enriquez. (Id. ¶ 50; see also Speres Aff., Ex. D (August 19, 2004

---

[6] "Opening Mem." refers to "Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment," filed on May 1, 2006. "Opp'n Mem." refers to "Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment," filed on June 1, 2006.

5

E-Mail)). "The RS 5014 form is the New York State and Local Retirement Systems' Withdrawal Application form used by a State employee for the return of that employee's contributions to the retirement system after that employee's separation from service, whether voluntary or involuntary." (Reply Weinreb Aff. ¶ 10 (citing Ex. M (RS 5014 Form))).[7]

On September 1, 2004, Plaintiff witnessed a sexual assault at Riverbank. (Speres Aff., Ex. J at 57/1-61/12 (Transcript of Plaintiff's January 24, 2006 Deposition); see also Compl. ¶ 18).[8] Plaintiff was supervising Samuel Suarez, a Riverbank employee. (Speres Aff., Ex. J at 60/13-61/12; see also Compl. ¶ 18). Mr. Suarez called out to Plaintiff, who was on duty, to "watch this," as he gestured towards four children approximately 11 or 12 years of age (three boys and one girl) who were swimming in the pool when one of the boys pulled down the top of the girl's bathing suit. (Speres Aff., Ex. J at 59/3-60/10; see also Compl. ¶ 18). Plaintiff immediately gestured for Mr.

---

[7] "Reply Weinreb Aff." refers to the "Reply Affidavit of Shelley Weinreb," including the exhibits appended thereto, filed on June 15, 2006.

[8] "Compl." refers to the "Complaint" filed by Plaintiff on December 6, 2004.

6

Suarez to speak with him, and Mr. Suarez merely smirked and laughed. (Speres Aff., Ex. J at 61/5-12; see also Compl. ¶ 18).

At the end of Plaintiff's shift that day, he reported the sexual assault to his supervisor, Mr. Alicea, and his belief that Suarez orchestrated the incident. (Speres Aff., Ex. J at 74/6-75/5). Mr. Alicea assured Plaintiff that he would "take care of it." (Id. at 70/7-12).[9]

On September 2, 2004, Mr. Alicea told Plaintiff that Mr. Suarez was arrested the day before for a different alleged sexual assault of a child. (Id. at 81/2-14). Plaintiff responded by asking Mr. Alicea what he had done with his complaint about Mr. Suarez's behavior and Mr. Alicea was non-responsive. (Id. at 82/13-83/10).

Plaintiff then went to Defendant Green to see if he had received Plaintiff's complaint about Mr. Suarez from Mr. Alicea. (Id. at 85/14-25). Defendant Green said he never received any report. (Id. at 86/1-15).

Later that morning, Plaintiff was speaking with a pool patron who asked Plaintiff about the arrest of Mr. Suarez.

---

[9] "[D]efendants deny that [P]laintiff informed Arturo Alicea of the September 1, 2004 incident," but, "for the purposes of this summary judgment motion only, [D]efendants will proceed under the assumption that such statement[], if made, might be protected." (Opening Mem. at 13).

7

(Id. at 84/4-21). The pool patron was allegedly a lawyer who frequently voiced concerns about the pool at Riverbank. (Compl. ¶ 23). Defendant Green then approached Plaintiff and told him to "shut the fuck up, if not [he] was going to be fired." (Speres Aff., Ex. J at 87/2-12).[10]

That same day, Defendant Green sent Ms. Weinreb and Defendant Mu'Min an e-mail at 10:48 a.m. (the "September 2, 2004 E-Mail") with draft termination letters for the three lifeguards identified by Mr. Alicea, Mr. Gonzalez, Mr. Trinidad, and Mr. Enriquez, including Plaintiff.[11] (Defs. 56.1 Stmt. ¶ 53). The subject line of the September 2, 2004 E-Mail was "Revised Termination Letters.2004." (Speres, Ex. E at DEF 2). In the E-Mail, Defendant Green requested that Ms. Weinreb review the letters and stated that "Jose will receive his letter on Saturday 9/4/04 before he goes on his Pass Days." (Id.).

---

[10] "[D]efendants deny that . . . [P]laintiff was scolded in the manner alleged while purportedly speaking with a pool patron regarding the Suarez incident," but, "for the purposes of this summary judgment motion only, [D]efendants will proceed under the assumption that [Plaintiff's discussion with the pool patron], if made, might be protected." (Opening Mem. at 13).

[11] At oral argument, counsel for Plaintiff conceded that there was no evidence demonstrating that the September 2, 2004 E-Mail was sent after Defendant Green witnessed Plaintiff speaking with a pool patron about the arrest of Mr. Suarez.

On September 3, 2004, Plaintiff did not come to work because he was sick. (Speres Aff., Ex. J at 89/12-15 (Transcript of Plaintiff's January 24, 2006 Deposition)). He was emotionally and mentally unable to work in light of "everything that had occurred." (Id. at 89/16-20).

On September 4, 2004, Plaintiff returned to work and spoke with Mr. Enriquez. (Id. at 90/16-18, 90/22-91/3). Mr. Enriquez told Plaintiff that investigators had spoken with various lifeguards, and Plaintiff stated that he wanted to speak with authorities about what he knew regarding Mr. Suarez. (Id. at 91/5-92/9).[12]

Later that day, Defendant Mu'Min provided Plaintiff with his termination letter, dated September 3, 2004. (Defs. 56.1 Stmt. ¶ 55). The termination letter contained information on Plaintiff's health insurance, last paycheck, and options concerning his contributions to the New York State Retirement System. (Speres Aff., Ex. F at P00001-02).

On September 6, 2004, the two other lifeguards identified by Mr. Alicea, Mr. Gonzalez, Mr. Trinidad, and Mr. Enriquez were terminated. (See Reply Weinreb Aff.

---

[12] "Defendants deny that [P]laintiff . . . informed Gilroy Enriquez that he wanted to speak with the detectives investigating the September 1, 2004 incident" but, "for the purposes of this summary judgment motion only, [D]efendants will proceed under the assumption that such statement[], if made, might be protected." (Opening Mem. at 13).

9

¶ 11; see also Opp'n Mem. at 8).  They have not been rehired.  (Reply Weinreb Aff. ¶ 11).

                              DISCUSSION

A.   Legal Standard for Summary Judgment Under Rule 56

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).  "Factual disputes that are irrelevant or unnecessary" cannot defeat a motion for summary judgment.  Id. at 248.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to the non-movant, in this case [the Plaintiff]."  Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 253 (2d Cir. 2002) (citing Matsushita Elec. Indus. Co.

10

v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)); see also Stern v. Trs. of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997) ("In assessing the record to determine whether there is such an issue, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."). Only if it is apparent that no rational fact-finder "could find in favor of the nonmoving party because the evidence to support its case is so slight" should summary judgment be granted. Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Although discrimination cases generally involve issues of intent, which are often left to the fact-finder to resolve, the Court of Appeals has gone "out of [its] way to remind district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting McLee v. Chrysler Corp., 38 F.3d 67, 68 (2d Cir. 1994)); see also Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.")).

11

B.   Legal Standard for First Amendment Retaliation Claim

"A public employee who makes a First Amendment claim of employment retaliation under § 1983 must show that: (1) his speech addressed a matter of public concern, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and that adverse employment decision, so that it can be said that the plaintiff's speech was a motivating factor in the adverse employment action." Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006) (citing Morris v. Landau, 196 F.3d 102, 110 (2d Cir. 1999)). "Even if the plaintiff establishes these three elements, . . . the employer may avoid liability by demonstrating that it would have taken the same adverse employment action 'even in the absence of the protected conduct.'" Cioffi, 444 F.3d at 162-63 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

C. <u>Application to Plaintiff's First Amendment Retaliation Claim</u>[13]

Defendants have submitted uncontroverted evidence that the decision to terminate Plaintiff was made no later than August 19, 2004, more than two weeks prior to the allegedly protected speech. (<u>See</u> <u>supra</u> at 5-6).[14] Moreover, Plaintiff does not dispute that he was aware of his poor time and attendance. (<u>See</u> Speres Aff., Ex. J at 36/3-38/9 (Transcript of Plaintiff's January 24, 2006 Deposition: "Q. In addition to that meeting [with Tracey Townes in 2001] do you remember if you were given any verbal warning on your time and attendance?  A. Possibly.  Q. What about the summer of 2002?  A. Could be a possibility, yes.

---

[13] For purposes of this motion for summary judgment, Defendants assume that Plaintiff has established a <u>prima facie</u> case. (<u>See</u> Opening Mem. at 13-14).

[14] Plaintiff's reliance on <u>Calabro v. Nassau Univ. Med. Ctr.</u>, 424 F. Supp. 2d 465, 473-74 (E.D.N.Y. 2006), to discount the August 19, 2004 E-Mail is misplaced. (<u>See</u> Opp'n Mem. at 16-17).  The document at issue in <u>Calabro</u> was issued after the plaintiff's allegedly protected speech and it contained conditional language.  424 F. Supp. 2d at 473 ("On June 19, 2003, the day after the news report [containing the protected speech], the Civil Service Commission responded, but even the June 19 memo was not definitive.  It read, 'Should the position be abolished [plaintiff] would be laid off as he has no bump or retreat rights.'").  Here, the August 19, 2004 E-Mail predates Plaintiff's allegedly protected speech, and Plaintiff concedes that it contains no conditional language.  (<u>See</u> Opp'n Mem. at 16 ("The email does not mention termination, nor does it reference his work performance or any other basis for termination.")).

13

Q. What about the summer of 2003?  A. Could also be a possibility.  Q. And in the summer of 2004?  A. Could be possible, yes.")).  In addition, Plaintiff acknowledged his supervisors' dissatisfaction with his performance.  (Id. at 37/12-16 ("Q. Based upon the [Summer 2003] evaluation do you think [it] informed you that your performance was less than satisfactory in the eyes of your supervisors?  A. Yes."); id. at 38/3-9 (Q. "Would you agree that [your evaluator's statement for your Summer 2002 evaluation is] a negative comment?  A. Yes.")).

   Nevertheless, Plaintiff contends that a reasonable fact-finder could conclude that Defendants had not, in fact, made the decision to terminate Plaintiff until after his allegedly protected speech.  In support of his argument, Plaintiff relies exclusively on the following three statements made by Defendant Green on September 2, 2004: (i) the threat that Plaintiff "was going to be fired" if he did not stop talking to a Riverbank pool patron about the sexual assault he witnessed (see supra at 7-8); (ii) the statement in his evaluation of Plaintiff for the Summer 2004 season that "[i]t is our recommendation that Mr. Tavarez does not continue employment after September 6, 2004" (Speres Aff., Ex. I at DEF 19); and (iii) the September 2, 2004 E-Mail containing a non-final version of

14

Plaintiff's termination letter (see supra at 8). These statements, according to Plaintiff, demonstrate that the decision to terminate was not finalized, thereby creating an issue of fact as to whether Plaintiff would have been terminated in the absence of his protected speech. (See Opp'n Mem. at 12-13).

Plaintiff's reliance on these statements is belied by his admission that Defendant Green "did not have authority in any event to terminate Plaintiff's employment . . . ." (Id. at 16). Moreover, in context with the uncontroverted evidence, these statements show, at most, that the decision to terminate Plaintiff had already been finalized and, to be effective, required only the mere ministerial act of delivering the termination letter. Accordingly, Defendants' motion for summary judgment on Plaintiff's First Amendment Retaliation claim is granted.

D.  Legal Standard for Fourteenth Amendment Due Process Claim

"A claim alleging procedural due process violations must show that plaintiff enjoyed a protected interest, and defendants' deprivation of that interest occurred without due process of law." Taylor v. Rodriguez, 238 F.3d 188, 191 (2d Cir. 2001) (citing Tellier v. Fields, 230 F.3d 502,

15

511 (2d Cir. 2000)). "In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship without cause." S & D Maint. Co. v. Goldin, 844 F.2d 962, 967 (2d Cir. 1988) (emphasis in original).

"While state law determines whether a public employee has a property interest in continued employment, 'federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause [of the Fourteenth Amendment].'" Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002) (quoting Ezekwo v. NYC Health & Hosps. Corp., 940 F.2d 775. 782 (2d Cir. 1991)). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).

16

E.   Application to Plaintiff's Fourteenth Amendment Due Process Claim

Plaintiff conceded at oral argument that his employment was originally at will.  The Seasonal Employment Letter and the Seasonal Employee Handbook unequivocally state that Plaintiff's employment was seasonal and temporary in nature and that Plaintiff could be terminated at any time and without prior notice. (See supra at 2). The parties do not dispute that there is no constitutionally protected interest in at-will employment.  (See Opp'n Mem. at 17-18; see also Opening Mem. at 18).

Nevertheless, Plaintiff contends that the source of his property right is Article 8 of the CBA because, by the time he was terminated, he was covered by Sections 75 and 76 of the New York Civil Service Law.  (See Opp'n Mem. at 18).  According to Plaintiff, the statute covers employees, such as lifeguards, who hold "a position in the non-competitive class . . . [and] who ha[ve] completed at least five years of continuous services in the non-competitive class . . . ."  (Id. (quoting N.Y. Civ. Serv. Law § 75(c)).

Defendants contend that "Articles 75 and 76 of the Civil Service Law are applicable only to employees who have permanent status."  (Opening Mem. at 19).  According to Defendants, the New York Department of Civil Service, the

17

agency which administers the Civil Service Law, states that Section 75(1)(c) applies only to "State and local employees holding non-competitive class position[s] by permanent appointment for at least five years . . . ." (Reply Mem. at 9 (quoting http://www.cs.state.ny.us/pio/summaryofcslaw/summofcsl4.htm#anchor20679 (last visited Mar. 20, 2007)).[15] It is well-settled that when an agency applies "its special expertise in a particular field to interpret statutory language, an agency's rational construction is entitled to deference." Paramount Communications, Inc. v. Gibraltar Casualty Co., 685 N.E.2d 1214, 1217 (N.Y. 1997) (citing Jennings v. New York State Office of Mental Health, 682 N.E.2d 953, 958 (N.Y. 1997).

Plaintiff does not dispute that the Department of Civil Service has interpreted Section 75(1)(c) as being limited to "permanent employees." (Sur-reply at 1-2).[16] Rather, Plaintiff contends that this construction is not rational because it "erroneously read[s] into the statute the notion that it covers only 'permanent' employees when the statute itself provides otherwise.'" (Id. at 2).

---

[15] "Reply Mem." refers to "Defendants' Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment," filed on June 15, 2006.

[16] "Sur-reply" refers to "Plaintiff's Sur-Reply in Further Opposition to Defendants' Motion for Summary Judgment," dated July 5, 2006.

Plaintiff relies on Igneri v. Brookhaven, 232 A.D.2d 638, 648 (N.Y. App. Div. 2d Dep't 1996) to support his position. (Sur-reply at 2). This reliance is misplaced because, as Plaintiff concedes, Igneri did not explicitly address the issue of whether the requirement of being in a non-competitive class for five continuous years applies only to permanent, as opposed to temporary, seasonal lifeguards. (Id. at 2). Rather, the Appellate Division concluded that the particular lifeguard was not covered by Section 75(1)(c) because he did not, in fact, meet the five year "continuous" service requirement. Igneri, 232 A.D.2d at 639. Plaintiff's interpretation is also contrary to the well-settled proposition "that provisional or temporary employees have no 'tenure of office and [are] not entitled to any review of [their] discharge under the provisions of section 75 . . . of the Civil Service Law.'" Ause v. Regan, 59 A.D.2d 317, 323 (N.Y. App. Div. 4th Dep't 1979) (quoting In re Hennessey v. Farrell, 43 Misc.2d 1045, 1048 (N.Y. Sup. Ct., Albany Cty., 1962), aff'd, 19 A.D.2d 698 (N.Y. App. Div. 3d Dep't 1963)).

Assuming arguendo that Plaintiff was covered by Section 75(1)(c), the NYSCOPBA bargained away those rights in the CBA. The Court of Appeals has held that "Section 75 rights . . . may be modified or replaced by a collective

19

bargaining agreement." Ciambriello, 292 F.3d at 314 (citing N.Y. Civ. Serv. Law § 76(4)). As noted, Appendix D to the CBA expressly covers seasonal employees, such as Plaintiff, and provides for only the limited pre-termination right of an exit interview with a NYSCOPBA representative. (See supra at 2-3). Plaintiff fails to cite to any language in Article 8 of the CBA or Appendix D suggesting that Appendix D is not in lieu of Article 8 of the CBA for seasonal employees, such as Plaintiff. Accordingly, Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment due process claim is granted.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment [dkt. no. 23] is granted. The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED:

Dated: March 28, 2007
       New York, New York

*Loretta A. Preska*
LORETTA A. PRESKA, U.S.D.J.